CITY OF DETROIT *v.* DETROIT UNITED RAILWAY.

1. MUNICIPAL CORPORATIONS—STREET RAILWAYS—FRANCHISES—REPAIRING PAVEMENTS—DUTY OF CITY.

A provision in a franchise granted by a city to a street-railway company, that all repaving or repairing of pavements on streets used by the company shall be done at the expense of the city, without any charge whatever against the company,

makes it the duty of the city to repair the foundation necessary for the support of the company's tracks.

2. SAME—VALIDITY OF CONTRACT—INTERNAL IMPROVEMENTS.
It is no objection to the validity of such provision that such foundation must be heavier than that required by the ordinary traffic on the streets; nor can it be said that the city thereby engages in a work of internal improvement.

*Certiorari* to Wayne; Brooke, J.   Submitted April 7, 1903.   (Calendar No. 19,867.)   Decided June 30, 1903.

*Mandamus* by the city of Detroit to compel the Detroit United Railway to make certain repairs on a street.   From an order granting the writ, respondent brings *certiorari.* Reversed.

*Timothy E. Tarsney,* for relator.

*Corliss, Andrus, Leete· & Joslyn* ( *C. D. Joslyn,* of counsel), for respondent.

HOOKER, C.·J.   We are asked, upon behalf of the respondent, to review the allowance of a writ of *mandamus* requiring the respondent, a street-railway company, to make certain repairs on Bagg street in the city of Detroit, the cause being before us upon *certiorari* to the circuit court for the county of Wayne.   The respondent succeeded to certain franchises received by its assignor by virtue of chapter 95 of Howell's Statutes, and the consent of the relator, whereby, in consideration of respondent's consent to a low fare, the relator agreed that:

"All paving or repaving or repairing of pavement upon any of the streets upon which said grantees * * * shall hereafter construct, maintain, and operate a street railway shall be done wholly at the expense of the city of Detroit, both within and without the rails of said tracks, and, after being paved or repaved by the city, the same shall be maintained and kept in repair by said city of Detroit, and there shall be no charge whatever, in any form or manner, against said grantees *· * * for said repaving and repairing of said streets and pavements."

But it was also provided that:

"This section shall not be construed as relieving the grantees, their successors or assigns, from paving, in accordance with the general street-railway ordinance, at their sole expense, under the supervision of the board of public works, all tracks and the spaces between the double tracks put by or for them into streets already paved at the time of first construction of said tracks in such paved streets; but such work shall be done by the grantees, their successors or assigns, at their sole expense, under the supervision of the board of public works, said supervision to also be at the expense of the grantees, their successors or assigns, who shall restore the street to a condition satisfactory to said board of public works; and thereafter the care of such pavement shall be at the expense of the city, as heretofore provided in this section.

"In all unpaved streets wherein the grantees are duly authorized by the common council to construct street-railway tracks under the provisions of this ordinance, the preparation of the roadbed shall be made by the grantees, their successors or assigns, the excavation to extend seven inches below the under side of the cross-ties upon which the tracks are laid; but the six inches of concrete required by the ordinance as foundation for the ties to rest upon shall be laid by and at the expense of the city at the time of the construction of the tracks; the city not being required, however, to do the paving between the tracks until the street is paved. The common council may, however, in its discretion, order the paving of the tracks on unpaved streets to be done at city expense contemporaneously with the first construction of said tracks."

Bagg street had been paved before the respondent constructed its railway upon it. According to the ordinance, it constructed the foundation and laid its track, as required by the city, under the supervision and to the satisfaction of its officers. Subsequently, some spots adjacent to its tracks became in bad condition, the pavement disintegrated and destroyed, and the foundation under the rails in places settled, allowing the rails to settle, due to the use of the track. The railway company having refused to repair the foundation and pavement, this proceeding was instituted. The questions discussed are:

"*First.* Whether a fair construction of the language of the ordinance, with reference to the maintaining and repairing of all the pavement and foundation, can fairly be made to cover the foundation necessary for the support of the track of the respondent company.

"*Second.* If it can, was the condition *ultra vires ?*

"*Third.* Is *mandamus* a proper remedy ?"

We think but one answer can reasonably be given to the first question, viz., that the city, and not the respondent, should do this work. Counsel invokes the principles enunciated in *People* v. *Township Board of Salem,* 20 Mich. 452 (4 Am. Rep. 400), and *Attorney General* v. *Pingree,* 120 Mich. 550 (79 N. W. 814, 46 L. R. A. 407), viz., that "it is unlawful to impose a tax to aid a private enterprise," and that "the city cannot engage in a work of internal improvement." There is no uncertainty in the contract, as shown by the words:

"There shall be no charge whatever, in any form or manner, against said grantees, their associates, successors, and assigns, for said repaving and repairing of said streets and pavements."

It is claimed, however, that the city had not the authority to bind itself by such a contract, for the reason that the construction and use of a street railway requires a heavier and stronger foundation than is required in the other portions of the highway used by lighter vehicles. A street railway is a public utility; it is an appropriate and necessary method of using the highway; and the municipalities may permit them to occupy and use portions of the streets. Such occupancy is in common with that of the general public, all persons being at liberty to. drive upon and over them where they are laid in the traveled portion of the street. The street-railway law does not in any way relieve the municipalities from the responsibility of maintaining the highways in a reasonably safe condition for public travel, and, as it cannot shift its liability to a railway company by contracting with it for the maintenance of the way, it would seem that it should be author-

ized, if it is not under a legal obligation, to repair the way when out of repair, whatever the cause. The right to assess the cost of pavement upon adjacent landowners is settled, and a wide discretion as to kind, solidity, and cost is left to the authorities. There can be no doubt that they may specify such a pavement as the present or prospective traffic of the street may require, and provide varying foundations according to circumstances. In all ordinary cases the same are made adequate to sustain the vehicles that will traverse the streets. If street cars could be run without a fixed way of special construction, so that they could run upon any portion of the highway, the foundations of the entire roadway would need to be heavier and stronger, and in such case there would be no impediment to the construction of the same in the ordinary routine of building and repairing highways, unless it be the fact that the running of such cars might be a monopoly. Street railways are adapted to aid travel in the public highways, and, while the laws providing for their use impose upon private corporations the burden of constructing and operating them, all such laws contemplate that they will be constructed upon the highway. They presuppose a highway maintained by the public, and we are of the opinion that it is not beyond the authority of the public officers to build a highway that will support such traffic, even though it need a heavier pavement than ordinary traffic requires. We are also of the opinion that it cannot be said that the city engages in a work of internal improvement by making a contract whereby it shall construct and repair its highways and pavements, instead of allowing the railway company to interfere with them.

The order is reversed, and the writ denied.

CARPENTER, GRANT, and MONTGOMERY, JJ., concurred with HOOKER, C. J. MOORE, J., concurred in the result.